IN THE CASE OF


Wade L. WALKER, Lance Corporal
U.S. Marine Corps, Petitioner

v.

UNITED STATES, Respondent

No. 04-8025

Crim. App. No. 9501607

United States Court of Appeals for the Armed Forces

Argued October 26, 2004

Decided December 9, 2004

EFFRON, J., delivered the opinion of the Court, in which
GIERKE, C.J., CRAWFORD, BAKER, and ERDMANN, JJ., joined.


Counsel


For Petitioner: Lieutenant Jason S. Grover, JAGC, USN
(argued); Lieutenant Michael J. Navarre, JAGC, USNR, and
Hardy Vieux, Esq. (on brief).


For Respondent: Captain Glen R. Hines, USMC (argued);
Lieutenant Colonel William K. Lieutzau, USMC (on brief).


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of officer members, Petitioner was convicted, contrary to his pleas, of two specifications of conspiracy, two specifications of violating a base order, two specifications of premeditated murder, one specification of felony murder (later dismissed), one specification of robbery, one specification of adultery, and one specification of kidnapping, in violation of Articles 81, 92, 118, 122 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 892, 918, 922, and 934. He was sentenced to death, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged. The case is pending review at the United States Navy-Marine Corps Court of Criminal Appeals.

Petitioner has requested that our Court provide extraordinary relief in the nature of a writ of mandamus and a writ of prohibition under 28 U.S.C. § 1651(a) on the following two issues:

I

WHETHER APPELLANT [PETITIONER] IS ENTITLED
TO A NEW STAFF JUDGE ADVOCATE'S
RECOMMENDATION AND CONVENING AUTHORITY'S
ACTION WHERE THE SJA WHO PREPARED THE REVIEW
WAS DISQUALIFIED BECAUSE THE ATTORNEY
REPRESENTING THE U.S. GOVERNMENT IN
APPELLANT'S CASE SUBSTANTIALLY PARTICIPATED
IN PREPARING THE SJA'S RECOMMENDATION.

II

> WHETHER UNDER ARTICLE 66(A), UCMJ, THE PANEL
> REVIEWING THE PETITIONER'S CASE IS PROPERLY
> ASSIGNED, AND WHETHER THERE CAN BE TWO CHIEF
> JUDGES OF THE NAVY-MARINE CORPS COURT OF
> CRIMINAL APPEALS.

For the reasons set forth below, we grant the petition for extraordinary relief in part. The court below may proceed with review of Petitioner's court-martial, provided that such review is conducted by a panel to which judges have been assigned by a judge designated by the Judge Advocate General to serve as chief judge in Petitioner's case. In all other respects, the petition for extraordinary relief is denied without prejudice to further consideration in the normal course of appellate review.

## I. PROCEDURAL BACKGROUND

In this capital case, the convening authority approved the adjudged sentence on June 21, 1995. The record was transmitted to the Navy-Marine Corps Court of Criminal Appeals, where it was assigned to Panel 3.

During the initial review of the case, the Court of Criminal Appeals, acting through Panel 3, set aside the convening authority's action and remanded the case for post-trial action by a different convening authority. United States v. Walker, No. 9501607 (N-M. Ct. Crim. App. Sept. 13, 1996).

United States v. Walker, No. 04-8025/MC

The new convening authority approved the adjudged sentence on July 10, 1998, and the case was placed on the docket of the Court of Criminal Appeals in August 1998.

Over the next five years, the composition of Panel 3 changed at various times. As a result of these changes and the recusal of several judges, the panel had only one participating member, Judge Suszan, when it issued an order on February 12, 2004, denying a pending defense motion. On February 25, Petitioner requested reconsideration of the motion, as well as one other that had been denied by a single-judge panel, on the grounds that the panel lacked the requisite quorum of two judges. See United States v. Lee, 54 M.J. 285, 286-87 (C.A.A.F. 2000); Courts of Criminal Appeals Rules of Practice and Procedure, Rule 4(a), 44 M.J. LXIII, LXV (1996).

Under typical circumstances, the deficiency resulting from lack of a quorum could have been readily rectified by the chief judge of the Court of Criminal Appeals. Under Article 66(a), UCMJ, 10 U.S.C. § 866(a), the chief judge could have filled the panel vacancies by assigning non-disqualified judges to sit on the panel. If the court as a whole did not have a sufficient number of non-disqualified judges to fill the panel, the Judge Advocate General could have appointed additional judges for service on the court, see United States v. Morgan, 47 M.J. 27, 29 (C.A.A.F. 1997), and the chief judge then could have filled

4

the panel with non-disqualified judges under Article 66(a).  In the present case, however, the chief judge had disqualified himself from involvement in the present case due to his prior role in the litigation as the Director of the Appellate Government Division.  See United States v. Lynn, 54 M.J. 202, 205 (C.A.A.F. 2000).

Subsequent to Petitioner's motion for reconsideration, the Clerk of Court of the Court of Criminal Appeals notified the Judge Advocate General on March 23, 2004, that the panel did not have a quorum.  According to the Clerk, Judge Villemez was the only remaining judge on the court in active service who was not disqualified from joining Judge Suszan on the panel.  The Clerk also identified four Naval Reserve appellate judges who were available for service.

Citing Canon 2A of the American Bar Association Model Code of Judicial Conduct, the Clerk further noted that it would be inappropriate for the chief judge -- who had recused himself from the case -- to designate members of the panel.  The Clerk observed that such an action would not be consistent with the admonition of Canon 2A against taking actions that do not promote "public confidence in the integrity and impartiality of the judiciary."

Consequently, the Judge Advocate General issued a memorandum to Judge Villemez on March 25, entitled "Designation

5

of Chief Judge, Navy-Marine Corps Court of Criminal Appeals,"

which contained the following:

> 1. Pursuant to [Article 66, UCMJ], you are hereby designated as Chief Judge, Navy-Marine Corps Court of Criminal Appeals, for the cases of *United States v. Lance Corporal Walker* and *United States v. Lance Corporal Kenneth G. Parker* [a companion case] only. You will determine, as appropriate, a panel of qualified appellate judges to consider said cases. You will designate, again as appropriate, a senior judge for any panel created.
>
> 2. Your designation is as a direct result of the current Chief Judge, Colonel W. Charles Dorman, USMC, being recused from said cases. Given Colonel Dorman's recusal, there is no Chief Judge with regard to these cases.
>
> 3. Your designation as Chief Judge is limited to said cases and associated responsibilities. Your designation shall not interfere with the duties of Colonel Dorman as he exercises his responsibilities as Chief Judge for all other cases before the court.
>
> 4. Your designation is effective immediately. You will be relieved of duty as Chief Judge for said cases upon the earlier of your detachment from the court, or the assignment of another appellate judge eligible to make such panel assignments for said cases.

The Judge Advocate General's memorandum apparently was not received by the court until April 13, 2004. In the meantime, Chief Judge Dorman issued a memorandum to all court personnel on March 29 entitled "Panel Assignments." Under the memorandum,

Panel 3 -- the panel to which Petitioner's case was assigned -- was composed of Judge Suszan, as well as two of the judges disqualified from acting in Petitioner's case.  The memorandum also included a new court policy establishing an order of precedence among judges on the court for the purpose of exercising the responsibility to make panel assignments in a particular case in the event of the absence or recusal of the chief judge.

After the court received the Judge Advocate General's letter on April 13, Judge Villemez exercised his newly-granted authority to determine a panel for Petitioner's case and issued a memorandum on April 14 entitled "Panel assignments in the case of United States v. Lance Corporal Wade L. Walker."  In this memorandum, Judge Villemez assigned himself and Judge Mulrooney to serve with Judge Suszan on the panel in the present case. Judge Villemez specifically cited the Judge Advocate General's March 25 letter as granting him the authority to establish the panel.

The Navy subsequently announced that Judge Villemez would retire on July 1, 2004.  In contrast to the Judge Advocate General's earlier designation of Judge Villemez to serve as chief judge for Petitioner's case, the Judge Advocate General did not designate a judge to succeed Judge Villemez upon his retirement.  On June 29, Petitioner filed a motion in our Court

to stay the proceedings before the Court of Criminal Appeals, pending proper designation of a chief judge by the Judge Advocate General.  On the same day, Petitioner filed the request for extraordinary relief presently before us.  We subsequently issued a show cause order, ordered a stay of proceedings, received briefs, and heard oral argument on the petition for extraordinary relief.

## II. DISCUSSION

### A. COMPOSITION OF THE PANEL
### AT THE COURT OF CRIMINAL APPEALS

Article 66(a), UCMJ, which governs the composition of the Courts of Criminal Appeals, assigns one set of responsibilities to the Judge Advocate General and a distinct set of responsibilities to the chief judge of the court.  Under the Article, each Judge Advocate General performs two primary duties.  First, the Article requires each Judge Advocate General to "establish a Court of Criminal Appeals which shall be composed of one or more panels . . . [each of which] shall be composed of not less than three appellate military judges." Article 66(a), UCMJ.  Second, the Article requires the Judge Advocate General to "designate as chief judge one of the appellate military judges of the Court of Criminal Appeals . . . ." Id.

Once the court is established and the chief judge is designated, responsibility for assignment of judges within the court is vested by statute in the chief judge. "The chief judge shall determinate on which panels of the court the appellate judges assigned to the court will serve and which military judge assigned to the court will act as the senior judge on each panel." Id. This provision reflects a determination by Congress to create a degree of separation between the Judge Advocate General and internal assignments within the court.

The statute does not provide expressly for a judge to perform the duties of the chief judge when the chief judge is absent or recused. The joint rules for the Courts of Criminal Appeals, promulgated under Article 66(f), 10 U.S.C. § 866(f), are likewise silent on this matter. See Courts of Criminal Appeals Rules of Practice and Procedure, 44 M.J. LXIII-LXXX (1996). Until the problem with recusal arose in the present case, the Navy-Marine Corps Court of Criminal Appeals did not have any applicable internal rule.

Petitioner contends that when Chief Judge Dorman recused himself from acting in Petitioner's case, the Judge Advocate General was not authorized to designate Judge Villemez to serve as the chief judge with respect to Petitioner's case. Petitioner asserts that because Article 66(a) permits only "one"

person to be designated as chief judge, the designation of Judge Villemez impermissibly produced "more than one" chief judge.

According to Petitioner, the responsibility for panel assignments should have been exercised directly by the Judge Advocate General. In taking that position, Petitioner would have us rigidly interpret one portion of Article 66(a) by narrowly applying the provision authorizing the Judge Advocate General to designate "one" chief judge. At the same time, Petitioner would have us loosely interpret another portion of the statute by overlooking the requirement in the same rule that identifies the chief judge, not the Judge Advocate General, as the official responsible for panel assignments. Petitioner has not offered a persuasive basis for the suggestion, inherent in his argument, that we should apply such inconsistent approaches to interpret different provisions within the same statute.

Recusal in the event of a conflict of interest is a critical element in assuring public confidence in the fairness of the administration of justice. While courts typically have either statutory or internal procedures to designate an acting chief judge when the chief judge is recused, see, e.g., Article 143(a)(5), UCMJ, 10 U.S.C. § 943(a)(5), the absence of such a procedure does not preclude an appropriate authority from ensuring the continuity of a court's operations in the event of the chief judge's recusal.

Petitioner acknowledges that the functions of the chief judge must be performed by another official because the Court of Criminal Appeals would otherwise be brought to a halt when action by the chief judge is required in a case or series of cases from which the chief judge is recused. Petitioner suggests that those functions should be performed by the Judge Advocate General, but he has not provided us with a persuasive reason for concluding that Congress intended that the Judge Advocate General directly perform a critical function -- assignment of a judge to a panel to hear a specific case -- that is committed to the chief judge by the text of the statute. The structure of the statute reflects a congressional preference for a division of responsibilities between the Judge Advocate General and the chief judge of the Court of Criminal Appeals. This preference is best furthered by concluding: (1) that the Judge Advocate General may perform the function assigned to that officer under Article 66(a) -- designating an appellate military judge as chief judge -- for a particular case or cases to fill the void caused by the recusal of the regularly serving chief judge; and (2) that the person serving as chief judge for a case or series of cases may perform in those cases the function assigned to the chief judge under Article 66(a) -- assigning judges to serve on the panel or panels that will hear those cases.

Although the chief judge of the Court of Criminal Appeals promulgated a policy on March 29, 2004, providing for designation of a person to perform the functions of the chief judge in the event of an absence or recusal, the court did not apply that policy to the vacancies on the panel reviewing Petitioner's case in the spring of 2004.  Instead, as detailed above, the court did not make assignments to that panel until the Judge Advocate General designated a judge to perform that function in Petitioner's case.

When a judge is recused, the judge should not take action to influence the appointment of his or her replacement.  See Richard E. Flamm, Judicial Disqualification: Recusal and Disqualification of Judges, § 22.3 (1996).  A chief judge is not necessarily disabled from issuing generally applicable rules that affect a wide range of cases before the court, even if the rule happens to apply to a case in which the chief judge is recused.  If, however, the rule will be applied only in that case or a readily identifiable set of cases in which the chief judge is recused, the rule must be drafted or applied in a manner that preserves the effect of the recusal.  Otherwise, the recusal will not serve the function of Canon 2A of the Model Code of Judicial Conduct with respect to promoting "public confidence in the integrity and impartiality of the judiciary." The fact that the court in the spring of 2004 did not utilize

12

the chief judge's succession policy in the present case ensured that the policy would not be applied in a manner that would undermine the effect of the recusal.

Although the court properly relied on the Judge Advocate General to select a chief judge for Petitioner's case in the spring of 2004, the court did not follow that approach when Judge Villemez -- the acting chief judge selected by the Judge Advocate General -- retired several months later.  Instead, the Clerk of Court stated that the court would rely on Chief Judge Dorman's memorandum to select an acting chief judge for the present case, an action that the court would have implemented but for the stay issued by our Court.  Reliance on the succession policy was impermissible under the circumstances of this case.  The chief judge, whose recusal remained in place, promulgated the policy in the midst of the litigation from which he was recused, and the impact on that litigation was readily identifiable.

The Government has not established the necessity of requiring reliance on the chief judge's memorandum now, when it was not necessary for the court do so earlier in the year.  A readily available procedure for appointment of a chief judge is available -- designation by the Judge Advocate General.  That procedure, which was used earlier in the year, remains available to move this case forward.

The Government suggests that issuance of the writ is not necessary and that the case may proceed without the assignment of an additional judge because participation by the two remaining judges will establish a quorum. See Lee, 54 M.J. at 286-87. Panel composition, however, is a responsibility committed to the judiciary, not the parties. According to the Clerk of Court, the Court of Criminal Appeals, which has not yet conducted significant proceedings on the merits of the pending appeal, anticipated proceeding with a full, three-judge panel.

To date, the Court of Criminal Appeals has not received briefs from the parties on the merits of the findings and sentence adjudged by the court-martial. The review, in this capital case, is likely to require a significant commitment of time and effort by that court. It would make little sense for the Court of Criminal Appeals to undertake the intensive review required in a capital case all the while knowing that the composition of the court -- an even number of judges -- could produce a decision, upon completion of review, in which the court would be equally divided on the findings or the sentence or both. The plan of the Court of Criminal Appeals, as described by the Clerk of Court, to proceed with a full panel recognizes that it would not be desirable to proceed with a two-judge panel, and we need not address whether it would be

14

appropriate for the court to do so in the present posture of this litigation.

Review under Article 66 is a critical element in achieving finality in court-martial proceedings. Consideration of a case by a panel composed of properly assigned appellate judges is an essential prerequisite to the conduct of appellate review under Article 66. Petitioner's case currently is pending Article 66 review before a court lacking a properly designated official who can perform the functions of the chief judge in making panel assignments. This is an extraordinary circumstance which directly and adversely affects the normal course of appellate review. Issuance of an extraordinary writ by our court is essential to ensure that Petitioner's case is before a panel authorized to conduct the normal course of appellate review.

## B. REVIEW OF FINDINGS AND SENTENCE

Petitioner also has challenged the propriety of the most recent action taken by the convening authority. Alleged errors in the recommendations of a staff judge advocate or actions of a convening authority are considered routinely in the appellate process. Petitioner has not demonstrated the necessity for addressing this assignment of error through an extraordinary writ.

15

### III. CONCLUSION

Petitioner's motion for extraordinary relief is granted in part. Assignment of judges to the panel reviewing Petitioner's court-martial shall not be made by or under the direction of a chief judge recused from this case. The Judge Advocate General shall designate an appellate military judge to perform the functions of the chief judge in view of the chief judge's recusal in the present case. After such a judge is designated to perform the duties of the chief judge, and upon the assignment of non-disqualified appellate judges to the appropriate panel by that designated chief judge, the stay is lifted and the court below may proceed with review of Petitioner's court-martial. Any issue as to whether a prior action of the court below was taken by a properly designated panel, or whether such an action otherwise should be reconsidered, shall be decided, in the first instance, by the court below. Any further question as to whether a prior or future panel in the present case was designated properly also shall be decided, in the first instance, by the court below. In all other respects the petition is denied without prejudice to further consideration of the issues stated therein during the normal course of appellate review.