UNITED STATES, Appellee

v.

Charles S. Roach, Senior Airman
U.S. Air Force, Appellant

No. 07-0870

Crim. App. No. S31143

United States Court of Appeals for the Armed Forces

Argued January 25, 2010

Decided May 10, 2010

BAKER, J., delivered the opinion of the Court, in which EFFRON, C.J., ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel

For Appellant:  Dwight H. Sullivan, Esq. (argued); Major Shannon A. Bennett (on brief).

For Appellee:  Gerald Bruce, Esq. (argued); Colonel Douglas Cordova, Lieutenant Colonel Jeremy S. Weber, and Captain G. Matt Osborn (on brief); Captain Ryan N. Hoback.

Military Judge:  Jennifer Whittier


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Roach, No. 07-0870/AF

Judge BAKER delivered the opinion of the Court.

A special court-martial composed of a military judge alone convicted Appellant, pursuant to his pleas, of one specification of dereliction of duty for willfully misusing his government travel card and one specification of use of cocaine, in violation of Articles 92 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892, 912a (2000).  Appellant was sentenced to a bad-conduct discharge, confinement for four months, and reduction to pay grade E-1.  The convening authority approved the sentence as adjudged except for the confinement, which was reduced to three months.

A panel of the United States Air Force Court of Criminal Appeals (CCA), which included Chief Judge James R. Wise, affirmed Appellant's conviction and sentence, despite not having received a brief from Appellant.  United States v. Roach (Roach I), No. ACM S31143, 2007 CCA LEXIS 402, at *3-*9, 2007 WL 2790660, at *1-*4 (A.F. Ct. Crim. App. Sept. 13, 2007).  The unpublished, per curiam opinion of the CCA stated:

> While this Court is well aware of the appellant's constitutional and statutory rights to effective counsel on appeal, that right is still subject to the rules of this Court. . . . Lengthy delays in reaching final resolution on adjudged punitive discharges in straight-forward cases such as this case do not serve either the interests of the accused or the interests of the Air Force.  Therefore this Court is taking action sans a brief appellate counsel [sic].

2

United States v. Roach, No. 07-0870/AF

2007 CCA LEXIS 402, at *3, 2007 WL 2790660, at *1 (citations omitted).

This Court granted review of two issues in January 2008, and remanded the case to the CCA six months later on the ground that "the court below proceeded to decide the case without taking the steps required under Bell and May" to ensure that Appellant could be provided representation under Article 70, UCMJ, 10 U.S.C. § 870 (2000). United States v. Roach (Roach II), 66 M.J. 410, 419 (C.A.A.F. 2008).

The parties agree that during the pendency of Appellant's first appeal to this Court, Chief Judge Wise commented on the case during two public events. The parties do not agree on what was said by the Chief Judge or in what manner.[1] Following the Chief Judge's remarks, Appellant moved for the recusal of the CCA panel to which the case had been assigned on remand. Chief Judge Wise withdrew from the case on August 22, 2008. Subsequent to that recusal, Chief Judge Wise wrote to Colonel

_____

[1] The record contains two affidavits from audience members at these events stating inter alia that Chief Judge Wise called the Roach case a "test case" and that the CCA "attempted to 'grab power' from CAAF." Another affidavit included in the record states that the Chief Judge explained "that there were two lines of jurisprudence with regard to the issues in Roach. One . . . supported the notion that [the CCA] had the power to decide the issue, and the other undermined that notion." Chief Judge Wise also submitted an affidavit that expressed that he tried to "drive home the point that even though we disagreed with our superior court on a point of law, we follow its guidance and direction even when it results in a loss of a tangible benefit that otherwise would have accrued."

Craig A. Smith, the executive to the Judge Advocate General of the Air Force (TJAG), recommending that TJAG designate Senior Judge Francis as the chief judge for the Roach case.[2] TJAG appointed Senior Judge Francis the same day. Chief Judge Francis then formed a special panel to consider Appellant's case and assigned himself to this panel.

Appellant did not learn of Chief Judge Wise's recommendation until April 14, 2009,[3] and immediately moved to replace Senior Judge Francis. The motion was denied, and that same day, the CCA again affirmed Appellant's conviction and sentence. United States v. Roach (Roach III), No. ACM S31143 (f rev), 2009 CCA LEXIS 159, at *50, 2009 WL 1514650, at *16 (A.F. Ct. Crim. App. Apr. 24, 2009). Appellant now appeals to this Court.[4]

---

[2] In its entirety, the body of Chief Judge Wise's e-mail stated:

> I have recused myself from participating in the case of U.S. v. Roach, ACM S31143. As a result, I request that General Rives appoint Senior Judge Dave Francis as the Chief Appellate Military Judge for this case pursuant to Rule 1.3 of the United States Air Force Court of Criminal Appeals Rules of Practice and Procedure. I have attached a memorandum that, once signed by General Rives, will accomplish this goal.

[3] On December 31, 2008, Appellant moved to receive all communications from the Chief Judge about his recusal, but the CCA denied that part of the motion seeking communications made after his recusal on August 25, 2008. Appellant obtained this information in response to a Freedom of Information Act request.

[4] We granted review on the following issues:

4

The threshold question asks whether the chief judge of a court of criminal appeals may recommend to the Judge Advocate General an acting chief judge for a case in which the chief judge is recused.  For the reasons stated below we answer this question in the negative, and we vacate the judgment of the CCA. The case is remanded for a new Article 66, UCMJ, 10 U.S.C. § 866 (2006), review by an independent panel.

DISCUSSION

Issue I:  Actions after a Recusal

The question of whether a judge has acted consistent with a recusal, as a mixed question of law and fact, is reviewed de novo.  See Walker v. United States, 60 M.J. 354, 356-57 (C.A.A.F. 2004) (performing a de novo review after granting a

---

I.  WHETHER THE AIR FORCE COURT ERRED BY REFUSING TO VACATE ITS RULING IN LIGHT OF THE ACTIONS OF THE CHIEF JUDGE REGARDING THE APPOINTMENT OF HIS REPLACEMENT AFTER HE HAD RECUSED HIMSELF.

II.  WHETHER THE AIR FORCE COURT ERRED BY BASING ITS SENTENCE DISPARITY ANALYSIS ON APPELLANT'S AND HIS CO-ACTOR'S ADJUDGED SENTENCES RATHER THAN THEIR APPROVED SENTENCES.

III. WHETHER THE AIR FORCE COURT ERRED BY DENYING APPELLANT'S MOTION TO COMPEL PRODUCTION OF E-MAILS SENT BETWEEN THE CHIEF JUDGE AND APPELLATE GOVERNMENT COUNSEL ABOUT THIS CASE FOLLOWING THE CHIEF JUDGE'S RECUSAL.

IV.  WHETHER THE APPELLANT'S DUE PROCESS RIGHT TO REASONABLY PROMPT APPELLATE REVIEW WAS DENIED BY THE DELAY IN THIS APPEAL ARISING FROM THE AIR FORCE COURT'S PROCESSING OF THIS APPEAL DURING ITS INITIAL REVIEW.

5

petition for extraordinary relief).  A recusal means the judge "may not preside over any subsequent proceedings in the case or perform any other judicial actions with respect to it."  Richard E. Flamm, Judicial Disqualification:  Recusal and Disqualification of Judges § 22.1 (1996) (footnotes omitted).  Once recused, a military judge should not play any procedural or substantive role with regard to the matter about which he is recused.  "When a judge is recused, the judge should not take action to influence the appointment of his or her replacement."  Walker, 60 M.J. at 358.

In Walker, the chief judge of the CCA had recused himself and the clerk of the court asked TJAG to appoint a different military judge to lead the reviewing panel.  Id. at 355-56.  The chief judge then created a general policy to determine his replacement when he was absent or recused.  Id. at 356.  The substitute military judge retired a few weeks later and the CCA followed the new court policy to replace him.  Id.  This Court held that "[t]he chief judge, whose recusal remained in place, promulgated the policy in the midst of the litigation from which he was recused, and the impact on that litigation was readily identifiable."  Id. at 358.

The parties in this case do not agree on what exactly Chief Judge Wise might have said that formed the basis of his recusal. Nor do they agree whether his recusal was required or

prudential, or where this case sits in relation to Walker.
These disagreements, however, do not impact our ultimate
conclusion, for the record reflects several conclusive facts.
First, in response to the Chief Judge's remarks, Appellant moved
for the recusal of the original CCA panel following this Court's
remand.  Second, the Chief Judge recused himself from the case
on August 22, 2008, and he did so without qualification and
without stating a reason.  Third, subsequent to that recusal,
the Chief Judge recommended that TJAG designate Senior Judge
Francis as the chief judge for the Roach case.  TJAG appointed
Senior Judge Francis the same day, and Chief Judge Francis then
formed a special panel to consider Appellant's case.

Chief Judge Wise's recommendation to TJAG to appoint Senior
Judge Francis was problematic for a number of reasons.  First,
and foremost, he took a procedural step after his recusal.
Whether directly controlled by Walker or not, his actions were
inconsistent with the spirit of Walker.  While Chief Judge Wise
was not promulgating a new policy, at a minimum his actions
created the appearance of directly impacting a case from which
he was recused.  Second, Senior Judge Francis not only sat on
the case, he authored it.  Third, concerns about perceptions of
impartiality in the military justice system are heightened where
a court of criminal appeals is asked to review not only the

decision of a trial court, but as in this case, the actions taken by a panel of the same court.

Having found an error in recusal, we must next determine whether the error was structural in nature, and therefore inherently prejudicial, or in the alternative, determine whether the error was harmless under Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988). Although the line between structural and nonstructural errors can be opaque, in this case, counsel for Appellant conceded at oral argument that the error was not structural in nature. We agree. Among other things, Appellant had his case reviewed by a three-member CCA panel composed of military judges appointed by the TJAG consistent with applicable regulations. Therefore, in this case we test for prejudice using the three Liljeberg factors. "[I]t is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." Id. at 864.

The third Liljeberg factor is determinative in this case. First, public confidence in the military judicial process is undermined where judges act in cases from which they are recused. This is true, whether the judge's role is significant or minimal. The record supports the CCA's conclusion that "any 'influence' flowing from Chief Judge Wise's 'recommendation' was

8

at best minimal and resulted in no discernible prejudice to the appellant." Roach III, No. ACM S31143 (f rev) (A.F. Ct. Crim. App. Apr 24, 2009) (ruling on Appellant's motion to vacate). Nonetheless, either a military judge is recused or he is not. A military judge who acts inconsistently with a recusal, no matter how minimally, may leave a wider audience to wonder whether the military judge lacks the same rigor when applying the law.

Second, although there is no evidence indicating that the second panel was actually influenced by Chief Judge Wise or reached its judgment based on factors other than its best judgment, confidence in the judicial process is surely undermined where a recused judge recommends the military judge who will subsequently review the recused judge's prior conduct. As noted above, in this case Senior Judge Francis not only presided over the panel hearing Appellant's case, he wrote the opinion, concluding inter alia that the "chief judge's explanation [was] both reasonable and credible" regarding his public statements. Roach III, 2009 CCA LEXIS 159, at *32, 2009 WL 1514650, at *10.

The appearance of impartiality may be especially important in the military justice context. From an outsider's perspective, it might well appear that at a court-martial and at the CCA, the critical players are invariably uniformed officers, usually if not always from the same service, and in many cases

drawn from what are relatively small communities of military judge advocates.  In this context, it is all the more important for participants to engage in their assigned duties without blurring legal and ethical lines; however well intentioned.  See United States v. Greatting, 66 M.J. 226, 232 (C.A.A.F. 2008).

## Issue II:  Sentence Disparity

Appellant next challenges the legal framework the lower court applied to his sentence disparity claim.  "The Courts of Criminal Appeals are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'"  United States v. Sothen, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting United States v. Ballard, 20 M.J. 282, 283 (C.M.A. 1985)).  Adjudged sentences are used because there are several intervening and independent factors between trial and appeal –- including discretionary grants of clemency and limits from pretrial agreements –- that might properly create the disparity in what are otherwise closely related cases.

In contrast, when the CCA is exercising its power over sentence appropriateness generally, it may consider both adjudged and approved sentences.  In turn, this Court "review[s] the sentence appropriateness decisions of the Courts of Criminal Appeals for abuse of discretion" and may "order a de novo review

when the lower court has erred as a matter of law." United States v. Hutchison, 59 M.J. 250, 251 (C.A.A.F. 2004); see United States v. Lacy, 50 M.J.286, 288 (C.A.A.F. 1999).

However, we need not and do not apply these principles to Appellant's case.  The issue of sentence disparity is moot before this Court in light of our resolution of Issue I.

### Issue III:  Appellate Discovery Request

Appellant recognizes that his claim in Issue I warranted some communication between Chief Judge Wise and the Government, and led to the generation of an affidavit from Chief Judge Wise. As a result, he next argues that any written communications between Chief Judge Wise and the Government should be disclosed to eliminate any appearance of unfairness during appellate review and to allow Appellant to assess and argue prejudice with respect to his case.  He requests that this Court unseal the communications and on remand direct the CCA to consider whether Appellant was prejudiced by the denial of his discovery request. In light of our decision to vacate based on Issue I, and our disposition with respect to Issue IV, this issue is also moot. The correspondence that occurred between Chief Judge Wise and Government counsel is not relevant to the next CCA review, which will be conducted by a new panel, and addresses only the remaining pending issue of sentence disparity.

Issue IV:  Appellate Due Process

Whether an appellant's due process right to a speedy post-trial review has been violated is reviewed de novo.  United States v. Moreno, 63 M.J. 129, 135 (C.A.A.F. 2006).  Under Moreno, the Court need not consider the factors from Barker v. Wingo, 407 U.S. 514, 530 (1972), unless there is a "facially unreasonable delay."  63 M.J. at 136.  The Court established a "presumption of unreasonable delay where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals."  Id. at 142.  The CCA released its first decision (Roach I) approximately thirteen months after the case was docketed.  On its face, this does not constitute a threshold showing of unreasonable delay warranting consideration of the additional Barker factors.

However, Appellant argues that the CCA purposefully ignored binding case law in an attempt to manipulate the law to reach a desired result.  Appellant contends these legal errors added nineteen months of additional and unacceptable post-trial delay. In the context of this argument, it is important to Appellant not only that Chief Judge Wise commented on his case in public, but also the manner in which he spoke.  Likewise, Appellant asserts that the e-mails requested above may bear on this

12

question, although he cannot say how because he has not seen them.

Whether, and how, a showing of "malicious delay" on the part of an appellate judge might inform the Barker factors, is a question for another day. In Roach I, the CCA identified a tension between two distinct lines of jurisprudence; one based on Moreno, emphasizing the importance of timely appellate review, and one based on United States v. Bell, 11 C.M.A. 306 (C.M.A. 1960), and United States v. May, 47 M.J. 478 (C.A.A.F. 1998), emphasizing the importance of an appellant's opportunity to be heard. In Roach II, this Court held that "[t]he error in this case is that the court below proceeded to decide the case without taking the steps required under Bell and May." 66 M.J. at 419. Prior to this Court's decision in Roach II, the tension between these earlier cases was unresolved. This is true regardless of how Chief Judge Wise may or may not have described the tension in public statements while Roach I was pending before this Court. And it is true whether or not the CCA fully identified and articulated the arguments on either side of the issue in Roach I. Based on the foregoing, we conclude that the opinion in Roach I does not implicate the concerns about "malicious delay" raised by Appellant.

In conclusion, the case does not reach the threshold of elapsed time to initiate review under Barker.

13

CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is vacated and the case is remanded for a new review under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006), before a new panel.