ERDMANN, Chief Judge
(concurring in part and dissenting in part):
I concur with the majority’s decision on Issue I, that under our precedent, the violation of Article 25, UCMJ, was harmless. However, I respectfully dissent from its determination that the military judge did not abuse his discretion when he denied the motions of both parties to recuse himself. The military judge in this case had a personal or professional relationship with nearly everyone involved in the court-martial process, to include the Staff Judge Advocate who advised the convening authority, the Article 32 hearing officer, the trial counsel, the assistant trial counsel, the defense counsel, three defense witnesses, the Judge Advocate General (TJAG). (his supervisor and a potential witness), the panel members, and the accused himself. Additionally, the military judge found himself in the same promotion pool as the accused. At some point, too much is simply too much.
Sullivan argues that in light of these facts, the military judge’s failure to recuse himself resulted in an appearance of bias. This is an issue we have addressed many times.
In the military context, the appearance of bias principle is derived from R.C.M. 902(a): “A military judge shall disqualify himself ... in any proceeding in which that military judge’s impartiality might reasonably be questioned.” The standard for identifying the appearance is objective: “[a]ny conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge’s impartiality might reasonably be questioned.” Kincheloe, 14 M.J. at 50 (alteration in original) (internal quotation marks omitted). As in the civilian context, recusal based on the appearance of bias is intended to “promote public confidence in the integrity of the judicial process.” Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 858 n. 7, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). “[W]hat matters is not the reality of bias or prejudice but its appearance.” Liteky v. United States, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). In the military justice system, where the charges are necessarily brought by the commander against subordinates and where, pursuant to Article 25, UCMJ, 10 U.S.C. § 825 (2006), the convening authority is responsible for selecting the members, military judges serve as the independent cheek on the integrity of the eourt-martial process. The validity of this system depends on the impartiality of military judges in fact and in appearance.
Hasan v. Gross, 71 M.J. 416, 418-19 (C.A.A.F.2012).
As noted by the majority, at the time of Sullivan’s trial, the military judge was the only member of the United States Coast Guard authorized to preside over general *457 courts-martial. It appears this situation is due to the Coast Guard’s relatively small active-duty size. Nevertheless, ‘“[a]n accused has a constitutional right to an impartial judge,’ ” United States v. Martinez, 70 M.J. 154, 157 (C.A.A.F.2011) (citation omitted), and there exists no exception for the Coast Guard because of its small size. This, of course, is because
[t]he neutrality [of an impartial judge] required by constitutional due process
helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. At the same time, it preserves both the appearance and reality of fairness....
The appearance standard helps to enhance confidence in the fairness of the proceedings because in matters of bias, the line between appearance and reality is often barely discernible.
United States v. Butcher, 56 M.J. 87, 90 (C.A.A.F.2001) (citation omitted).
Certainly “[p]ersonal relationships between members of the judiciary and witnesses or other participants in the court-martial process do not necessarily require disqualification.” United States v. Norfleet, 53 M.J. 262, 270 (C.A.A.F.2000). Nevertheless, it remains important to remember that “the interplay of social and professional relationships in the armed forces poses particular challenges for the military judiciary.” Butcher, 56 M.J. at 91. These challenges exist whether the ease is tried before members or before a military judge alone. See United States v. McIlwain, 66 M.J. 312, 314 (C.A.A.F.2008) (“[I]f a judge is disqualified to sit as a judge alone, [s]he is also disqualified to sit with members.”) (alteration in original) (internal quotation marks and citation omitted). This is because it “is well-settled in military law that the military judge is more than a mere referee.” Id.
Unlike previous cases we have considered, the military judge in this case had a personal or professional relationship with virtually every individual involved in the court-martial process. The military judge recognized that these relationships were significant when he spent eighteen pages of the record listing them. Then, in response to written questions posed by the government, the military judge continued on the record for approximately fourteen more pages. For the next thirty-five pages, the government and the defense verbally voir dired the 'military judge. At the conclusion of voir dire, both parties had sufficient concerns that they moved for the military judge to recuse himself.
The voir dire also revealed a situation involving the relationship between the military judge and the Coast Guard TJAG. The military judge reported directly to TJAG, who signed the military judge’s performance report. When it appeared that TJAG might be called as a witness, the military judge made a call to the Deputy Judge Advocate General (DJAG) to give TJAG a “heads-up.” When asked by the defense whether the military judge would have done that for any other witness, the military judge replied “[p]roba-bly not, because I don’t work for any other witness.” Aso of concern to an objective observer is the fact that the military judge was in the same promotion pool as Sullivan.[1]
Despite all of this, the military judge failed to recognize that these multiple relationships would lead a reasonable person, knowing all the circumstances, to the conclusion that the military judge’s impartiality might reasonably be questioned. United States v. Kincheloe, 14 M.J. 40, 50 (C.M.A.1982). Instead, he stated he would seek out other potential military judges from the sister services “as a matter of helping both sides [to] find it easier to pick a court-martial panel” and as “a matter of convenience.” When asked by the defense why the military judge would do so if he did not believe there was a problem, the military judge reiterated that it was a matter *458 of convenience.[2] Under these circumstances a reasonable person, knowing all the circumstances, might harbor doubts about military-judge’s impartiality. See Martinez, 70 M.J. at 158; Butcher, 56 M.J. at 91.
That said, this court has also “recognized that not every judicial disqualification error requires reversal and has adopted the standards the Supreme Court announced in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), for determining whether a judge’s disqualification under 28 U.S.C. § 455(a) (2000), warrants a remedy.” McIlwain 66 M.J. at 315. The Liljeberg factors include: “1) the risk of injustice to the parties, 2) the risk that the denial- of relief will produce injustice in other cases, and 3) the risk of undermining public confidence in the judicial process.” Id.
It is the third Liljeberg factor that is relevant to this inquiry. Is there a risk of undermining the public’s confidence in the military justice system where the judge knows almost everyone in the proceeding, is in the same promotion pool as the accused, and has contacted his boss, who was a potential witness, to give him a “heads-up”? I believe there is. Adding to the lack of public confidence is that the matter could have been resolved by making a formal request for a military judge to the Judge Advocate General of a sister service. See Rule for Courts-Martial 503(b)(3). The failure to remedy the issue when it was relatively easy to do so could only create additional doubt in the public’s mind.[3]
For these reasons I believe that a reasonable person, knowing all the circumstances, might reasonably question the military judge’s impartiality. Consequently, the military judge’s failure to recuse himself undermined public confidence in the integrity of the military justice system. Accordingly, I respectfully dissent from the majority as to Issue II.

. While there is conflicting evidence regarding whether Sullivan would remain in the promotion pool during the court-martial, assuming he was temporarily removed from the pool for the pen-dency of the court-martial, a conviction would remove him from the pool permanently.

. While the military judge indicated that he would pursue this informal attempt to remedy the situation, his efforts apparently failed due to his insistence that the new military judge be - available for trial on certain dates. However, "[ojnce recused, a military judge should not play any procedural or substantive role with regard to the matter about which he is recused.” United States v. Roach, 69 M.J. 17, 20 (C.A.A.F.2010); see also Walker v. United States, 60 M.J. 354, 358 (C.A.A.F.2004) ("When a judge is recused, the judge should not take action to influence the appointment of his or her replacement.”). In other words, any new judge appointed would be responsible for determining an appropriate trial date.

. Another way of looking at the issue is to consider whether a military judge in another service, without the size constraints of the Coast Guard, would have recused him/herself under similar circumstances.