**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Technical Sergeant DAVID J.A. GUTIERREZ**
**United States Air Force**

**ACM 37913 (rem)**

**23 November 2015**

Sentence adjudged 19 January 2011 by GCM convened at McConnell Air Force Base, Kansas. Military Judge: William C. Muldoon (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 8 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for Appellant: Captain Michael A. Schrama (argued); Colonel Patrick J. Wells; and Kevin B. McDermott, Esquire.

Appellate Counsel for the United States: Major Meredith L. Steer (argued); Colonel Katherine E. Oler; Major Mary Ellen Payne; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and DUBRISKE
Appellate Military Judges

OPINION OF THE COURT
UPON REMAND

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

MITCHELL, Senior Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, contrary to his pleas, of failing to obey a lawful order, indecent acts, aggravated assault, and adultery, in violation of Articles 92, 120, 128, and 134, UCMJ, 10 U.S.C. §§ 892, 920, 928, 934. The military judge sentenced Appellant to a

dishonorable discharge, eight years of confinement, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged.

*Background*

Appellant's convictions stem from his failure to disclose that he had human immunodeficiency virus (HIV) prior to engaging in otherwise consensual sexual activity with multiple partners while he and his wife participated in "the swingers' lifestyle." *United States v. Gutierrez*, 74 M.J. 61, 63 (C.A.A.F. 2015) (*Gutierrez IV*) (brackets and internal quotation marks omitted).

In 2007, Appellant tested positive for HIV. In 2009, Appellant was ordered by his commanding officer to "inform sexual partners that [he was] HIV positive and use proper methods to prevent the transfer of body fluids during sexual relations, including the use of condoms providing an adequate barrier for HIV (e.g. latex)." *Id.* (internal quotation marks omitted). Appellant refused to obey the order. Appellant engaged in sexual intercourse and oral sodomy with at least seven partners without first informing them that he was HIV positive. He further violated the order by engaging in unprotected sexual activity with three of these partners.

In March 2013, this court affirmed the findings and sentence. *United States v. Gutierrez*, ACM 37913 (A.F. Ct. Crim. App. 21 March 2013) (unpub. op.) (*Gutierrez I*). That decision was set aside by our superior court because of the improper appointment of a civilian judge. *United States v. Gutierrez*, 73 M.J. 128 (C.A.A.F. 2013) (mem.) (*Gutierrez II*). This court issued a second opinion, with a properly constituted panel, again affirming Appellant's convictions. *United States v. Gutierrez*, ACM 37913 (A.F. Ct. Crim. App. 25 February 2014) (unpub. op.) (*Gutierrez III*). Upon review, our superior court determined that the evidence was legally insufficient to support the convictions for aggravated assault, but affirmed convictions for the lesser included offense (LIO) of assault consummated by a battery as well as the convictions for failure to obey a lawful order, indecent acts, and adultery. *Gutierrez IV*, 74 M.J. at 68. Our superior court reversed our decision as to the sentence and remanded the case to this court to either reassess the sentence or set it aside and order a rehearing. *Id.* Our superior court also directed us to consider whether Appellant's due process rights were violated by the appellate delay that occurred in this case. *Id.*

On remand, Appellant argues that the sentence should be set aside and remanded for a new hearing and that his due process rights were violated by the appellate delay.[1]

---

[1] Oral argument was held on 20 October 2015.

*Sentence Reassessment or Rehearing*

This court has "broad discretion when reassessing sentences." *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013). If we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). In determining whether to reassess a sentence or order a rehearing, we consider the totality of the circumstances with the following as illustrative factors: (1) dramatic changes in the penalty landscape and exposure, (2) the forum, (3) whether the remaining offenses capture the gravamen of the criminal conduct, (4) whether significant or aggravating circumstances remain admissible and relevant, and (5) whether the remaining offenses are the type with which we as appellate judges have the experience and familiarity to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16. Applying these factors to this case, we are confident that reassessment is appropriate.

1. Change in the Penalty Landscape and Exposure

There has been a change in the penalty landscape and exposure;[2] however, this change is not so drastic as to require a sentence rehearing. As the *Winckelman* court noted, each factor is "illustrative, but not dispositive." 73 M.J. at 15. Thus, a change in the maximum punishment does not automatically require a sentence rehearing. *See Winckelman*, 73 M.J. at 13, 16 (holding that it was not an abuse of discretion to reassess the sentence where the maximum amount of confinement decreased from 115 years to 51 years); *United States v. Jones*, ACM 38434, unpub. op. at 20–22 (A.F. Ct. Crim. App. 13 March 2015), *rev. denied* __ M.J. __ No. 15-0564/AF (Daily Journal 6 July 2015) (imposing the same sentence as adjudged and approved despite a decrease in the maximum amount of confinement from 32 years and 6 months to 7 years and 6 months); *see also United States v. Burkhardt*, ACM 38625, unpub. op. at 10 (A.F. Ct. Crim. App. 12 June 2015), *rev. denied* __ M.J. __ No. 15-0745/AF (Daily Journal 9 September 2015) (reassessing the sentence after setting aside aggravated assault convictions related to the sexual activity of an HIV-positive appellant); *United States v. Atchak*, ACM 38526, unpub. op. at 17 (A.F. Ct. Crim. App. 10 August 2015) (reassessing the sentence after setting aside aggravated assault convictions related to the sexual activity of an HIV-positive appellant); *United States v. McGruder,* Army 20130294 (Army Ct. Crim. App. 30 October 2015) (unpub. op.) (reassessing the sentence after affirming an LIO of assault consummated by a battery for sexual intercourse while not revealing HIV-positive status and setting aside other offenses). Additionally, the adjudged sentence of confinement in

___

[2] At trial, Appellant faced a maximum sentence of a dishonorable discharge, confinement for 33 years and 6 months, total forfeiture of pay and allowances, and reduction to E-1. After our superior court set aside the aggravated assault convictions and found Appellant guilty of the lesser included offense of assault consummated by a battery, the maximum amount of confinement was reduced to 16 years.

this case is only half of the maximum that could have been imposed even under the new penalty landscape.

Therefore, the change in the penalty landscape does not make a sentence rehearing "the only fair course of action" in this case. *See United States v. Buber*, 62 M.J. 476, 480 (C.A.A.F. 2006). While there has been a change, an analysis of the totality of the circumstances and of the remaining *Winckelman* factors lead us to the conclusion that sentence reassessment is appropriate.

2.  Forum

Appellant was sentenced by a military judge. This factor weighs in favor of reassessment because we can be more confident what a military judge would have done as opposed to members. *Winckelman*, 73 M.J. at 16.

3.  Gravamen of the Criminal Conduct

The remaining offenses capture the gravamen of the criminal conduct. Appellant was found guilty of the LIO of assault consummated by a battery for each aggravated assault specification. Appellant also remains convicted of multiple specifications of failure to obey a lawful order, indecent acts, and adultery. In sum, Appellant remains convicted of committing the same acts, on the same dates, in the same locations, and harming the same individuals. Absent extraordinary circumstances, we believe appellants are sentenced based on their actions, not the name of the offense they are charged with committing. *United States v. Davis*, 48 M.J. 494, 495–96 (C.A.A.F. 1998); *Jones*, unpub. op. at 21. We are even more convinced of this when, as here, an appellant has been sentenced by a military judge.

4.  Admissibility of Aggravating Circumstances

The aggravating circumstances remain relevant and admissible. Appellant is still guilty of violating a lawful order just days after receiving this order from his commander. Moreover, the facts and circumstances admitted in the original proceeding as evidence of the aggravated assault offenses would still be relevant and admissible either in findings or in sentencing regarding the LIO of assault consummated by battery. Appellant is guilty of this LIO because his "conduct included an offensive touching to which his sexual partners did not provide meaningful informed consent." *Gutierrez IV*, 74 M.J. at 68. The testimony by the victims that they asked him about his HIV status, that he falsely claimed he was HIV negative, their personal experiences with family members who had contracted the HIV virus and resulting complications (to include the death of a brother), and the reasons why they would not have consented to sexual activity had he been truthful is all evidence that would have continued to be admissible. The potentially mitigating evidence regarding the low statistical likelihood that Appellant's conduct

would transmit the virus to his partners and that none of his partners had tested positive for HIV as of the date of the court-martial would also be admissible. In sum, a new sentencing hearing would not present new evidence or limit the evidence admitted during Appellant's original sentencing hearing.

## 5. Ability to Determine What Sentence Would Have Been Imposed

We have the experience and familiarity to determine a proper sentence in this case. Appellant has been convicted of failure to obey a lawful order, committing indecent acts, assault consummated by battery, and adultery. These are not novel charges. We interpret Appellant's position at oral argument to be that our superior court judicially created a new offense to which this court has no experience in determining an appropriate sentence. We disagree. Our superior court overruled *United States v. Joseph,* 37 M.J. 392 (C.M.A. 1993), and reversed 22 years of stare decisis; however, as explained above, the evidence in aggravation (and in mitigation) would still be admissible. We have experience and familiarity with determining a proper sentence in cases involving "offensive touching to which . . . sexual partners did not provide meaningful informed consent." *Gutierrez IV*, 74 M.J. at 68. Under these circumstances, we are confident that we have the collective knowledge and experience to reliably determine what sentence would have been imposed.

### *Sentence Reassessment*

After a thorough review of the *Winckelman* factors, we are convinced that reassessing Appellant's sentence is "more expeditious[], more intelligent[], and more fair[]" than returning the case for a sentence rehearing. *Winckelman*, 73 M.J. at 14 (quoting *Jackson v. Taylor*, 353 U.S. 569, 580 (1957)). Under the totality of the circumstances, we are confident that we can reliably determine that the military judge, absent any error, would have imposed a sentence of at least a bad-conduct discharge, six years of confinement, total forfeiture of pay and allowances, and reduction to E-1.

### *Post-Trial Delay*

We review de novo whether an appellant has been denied the due process right to speedy post-trial review and whether any constitutional error is harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). In *United States v. Moreno*, the Court of Appeals for the Armed Forces established certain post-trial processing time standards. 63 M.J. 129, 142 (C.A.A.F. 2006). A presumption of unreasonable delay arises when an appellate decision is not rendered within 18 months of the case being docketed with this court. *Id.* The *Moreno* standards continue to apply as a case moves through the appellate process; however, the *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this court and our superior court is within the 18-month standard. *United States v. Mackie*, 72 M.J. 135,

135–36 (C.A.A.F. 2013); *see also United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010).  However, when a stage of appellate review is not completed within 18 months, it is a presumptively unreasonable delay and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant."  *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 407 U.S. at 530.  If we are able to conclude that any error was harmless beyond a reasonable doubt, we do not need to engage in a separate analysis of each factor.  *See Allison*, 63 M.J. at 370.

The 22 months between docketing and the opinion in *Gutierrez I* is presumptively unreasonable; thus, we move to the *Barker* factors, focusing our attention on prejudice to Appellant.  Appellant argues that he has been prejudiced by the delay because (1) he was subject to oppressive incarceration and (2) he has suffered particularized anxiety and concern.

In arguing that the incarceration was oppressive, Appellant compares his situation to *Moreno* and concludes that, because the appellant in *Moreno* suffered oppressive incarceration when the charges were set aside, Appellant was also prejudiced when the aggravated assault charges were set aside.  Appellant's reliance on *Moreno* is misplaced because the oppressive incarceration sub-factor is "directly related to the success or failure of an appellant's substantive appeal."  *Moreno*, 63 M.J. at 139.  Unlike *Moreno*, Appellant's conviction was not set aside; instead, he remains convicted of numerous crimes, including an LIO of the charge which has been set aside.  Appellant's incarceration has not been oppressive.

Appellant also argues that he has suffered prejudice because he was subjected to anxiety and concern during the appellate process.  In an attempt to demonstrate that his anxiety and concern were more than that normally experienced by prisoners awaiting appellate review, Appellant compares the "media scrutiny" of his case to the appellant in *Moreno* who had to register as a sex offender.  We are not persuaded by this comparison.  Unlike *Moreno* where the appellant was no longer required to register as a sex offender when his convictions were set aside, our superior court's decision does not entitle Appellant to relief from "media scrutiny."  Appellant remains convicted of crimes that arose from his failure to obey a lawful order, refusal to inform his sexual partners of his HIV status, indecent acts, and adultery.  Whatever "media scrutiny" occurred under the original facts of this case would have been present if Appellant had been charged with assault consummated by battery instead of aggravated assault.  Therefore, we are not convinced that Appellant suffered any anxiety or concern not normally experienced by prisoners awaiting appellate review.

When there is no showing of prejudice under the fourth *Barker* factor, "we will find a due process violation only when, in balancing the other three factors, the delay is

so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in the initial processing of this case to not be so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced that even if there is error, it is harmless beyond a reasonable doubt.

A finding of harmless error does not end the inquiry. Under Article 66, UCMJ, 10 U.S.C. § 866(c), we have the unique authority to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 25 (C.A.A.F. 2006). In *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), we identified a list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Those factors include how long the delay exceeded appellate review standards, the reasons for the delay, whether the government acted with bad faith or gross indifference, evidence of institutional neglect, harm to Appellant or to the institution, if relief is consistent with the goals of both justice and good order and discipline, and whether this court can provide meaningful relief. *Id.* No single factor is dispositive and we may consider other factors as appropriate. *Id.* After examining the appropriate factors, we determine that no relief is warranted.

Although the initial delay exceeded the *Moreno* standard by four months, no other time period has exceeded the standards. Even analyzing the entire period from the time the case was first docketed until today, we find there was no bad faith or gross negligence in the post-trial processing. The reason for the delay after our initial decision was to allow this court and our superior court to consider a constitutional issue of first impression concerning whether the Secretary of Defense had the authority to appoint a civilian employee to the courts of criminal appeals. Subsequent delays were the result of appellate review of the issue concerning the statistical probabilities of transmitting an infectious disease through sexual contact and the legal standard of whether those probabilities were likely to result in death or grievous bodily harm. Our superior court's decision overturned more than two decades of military precedent regarding how this legal standard applied to HIV cases. Based on these facts, we find no evidence of harm to the integrity of the military justice system.

After our review of the entire record, we conclude that additional sentence relief under Article 66, UCMJ, is not warranted.

ACM 37913 (rem)

*Conclusion*

We have reassessed the sentence to a bad-conduct discharge, six years of confinement, total forfeiture of pay and allowances, and reduction to E-1. The findings, as modified by our superior court, and sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ. Accordingly, the findings, as modified, and the sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court