# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

**UNITED STATES**

**v.**

**Airman First Class BOBBY R. RODRIGUEZ**
**United States Air Force**

**ACM 37927 (recon)**

**25 September 2014**

Sentence adjudged 11 February 2011 by GCM convened at Moody Air Force Base, Georgia. Military Judge: Terry A. O'Brien.

Approved sentence: Dishonorable discharge, confinement for 4 years, and reduction to E-1.

Appellate Counsel for the Appellant: Major Nicholas D. Carter and Captain Travis K. Ausland.

Appellate Counsel for the United States: Lieutenant Colonel Linell A. Letendre; Lieutenant Colonel C. Taylor Smith; Major Daniel J. Breen; Major Erica L. Sleger; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is subject to editorial correction before final release.

HECKER, Senior Judge:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of aggravated sexual assault by having sexual intercourse with a substantially incapacitated victim and assault consummated by a battery, in violation of Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920, 928. The court sentenced him to a dishonorable discharge, confinement for 4 years, and reduction to E-1. The convening authority approved the sentence as adjudged.

*Procedural History*

The appellant initially raised four assignments of error to this court in 2012. These issues included: (1) unreasonable multiplication of charges, (2) failure to instruct on mistake of fact as to consent as an affirmative defense, (3) ineffective assistance of counsel, and (4) legal and factual insufficiency of the evidence. The appellant later filed a supplemental assignment of error, arguing an unreasonable post-trial delay.

On 25 January 2013, The Judge Advocate General of the Air Force appointed Mr. Laurence M. Soybel to the position of appellate military judge on the Air Force Court of Criminal Appeals pursuant to Article 66(a), UCMJ, 10 U.S.C. § 866(a). At the time of this appointment, Mr. Soybel, a retired Air Force officer and former appellate military judge, was serving as a civilian litigation attorney in the Department of the Air Force.

On 2 May 2013, we dismissed the assault consummated by a battery specification because the appellant had also been convicted of aggravated sexual assault based on the same conduct, but we found no basis for other relief. *United States v. Rodriguez*, ACM 37927 (A.F. Ct. Crim. App. 2 May 2013) (unpub. op.). Mr. Soybel took part in that decision pursuant to his apparent appointment by The Judge Advocate General.

On 25 June 2013, the Secretary of Defense, "[p]ursuant to [his] authority under title 5, United States Code, section 3101 *et seq*.," issued a memorandum that "appoint[ed] Mr. Laurence M. Soybel, a civilian employee of the Department of the Air Force, to serve as appellate military judge on the Air Force Court of Criminal Appeals." Memorandum from Sec'y of Def. Chuck Hagel for Sec'y of the Air Force Eric Fanning, (25 June 2013). This court then sua sponte reconsidered its decision and issued another decision on 16 July 2013, which reaffirmed the substance and holdings of the prior decision. *United States v. Rodriguez*, ACM 37927 (recon) (A.F. Ct. Crim. App. 16 July 2013) (unpub. op.).

The appellant moved to vacate the decision on the basis of Mr. Soybel's participation. On 31 October 2013, our superior court dismissed the petition for review without prejudice. *United States v. Rodriguez*, 73 M.J. 91 (C.A.A.F. 2013) (mem.). The record of trial was returned to our court on 13 March 2014. On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint appellate military judges and that his appointment of Mr. Soybel to this court was "invalid and of no effect."

In light of *Janssen*, we granted reconsideration and vacated our prior decision in this matter. After we permitted the appellant to submit a supplemental assignment of errors, he again raised the issue of post-trial delay, arguing his due process right to speedy appellate processing was violated under *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006), and *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002).

With a properly constituted panel, we have reviewed the appellant's case, to include the appellant's previous and current filings and the previous opinions issued by this court. Finding the appellant is entitled to partial relief, we modify the findings by exception and affirm the modified findings and the adjudged sentence.

*Background*

The victim and her husband, Airman First Class (A1C) PD, planned a weekend trip to Atlanta to buy furniture in February 2010. A1C PD invited the appellant and Airman Basic (AB) AS, both of whom were friends and co-workers, to travel with them in a separate large vehicle to assist in transporting the furniture. A1C PD offered to pay for a single hotel room where they would all sleep. They traveled to Atlanta, checked into the hotel, and the four went out for an evening of drinking.

After consuming a large amount of alcohol, the victim and A1C PD returned to the hotel room and went to sleep. The appellant and AB AS returned later and repeatedly attempted to awaken the victim and her husband but were unable to do so. AB AS testified that he saw the appellant under the blankets with his head moving around near the sleeping victim's pelvic area. He then saw the appellant engaging in what appeared to be sexual intercourse with the victim as she lay motionless and silent. While doing this, the appellant told AB AS "I'm fu[**]ing her" and giggled.

When the victim awoke to the feeling of the appellant penetrating her, she began crying and called out for A1C PD, who awoke to see the appellant on top of his wife. The appellant then moved off the bed and lay on the floor.

A1C PD wrapped his wife in a blanket, went to the lobby, and called the police. Following rights advisement, the appellant told a responding detective that he fell asleep on top of the victim and her husband while trying to awaken them, but he did not admit to any sexual contact.

*Multiplicity*

The Government charged both aggravated sexual assault (for engaging in sexual intercourse with the victim while she was substantially incapacitated) and assault consummated by a battery (for touching the victim's genital area with his penis) based on the same conduct, and trial counsel argued the charges in the alternative. After the court convicted the appellant on both charges, the military judge merged them for sentencing

and instructed the members that they must consider them as one offense. The appellant now contends the military judge erred when she failed to sua sponte dismiss the assault consummated by a battery charge as either multiplicious or an unreasonable multiplication of charges.

We agree the assault consummated by a battery charge must be dismissed. The Government is authorized to charge multiple offenses in the alternative based on exigencies of proof. *See United States v. Morton*, 69 M.J. 12, 16 (C.A.A.F. 2010). When a panel returns guilty verdicts as to those alternative charges, however, "'it [is] incumbent' either to consolidate or dismiss a specification." *United States v. Elespuru*, 73 M.J. 326, 329 (C.A.A.F. 2014) (quoting *United States v. Mayberry*, 72 M.J. 467, 467–68 (C.A.A.F. 2013)). "Dismissal of specifications charged for exigencies of proof is particularly appropriate given the nuances and complexity of Article 120, UCMJ, which make charging in the alternative an unexceptional and often prudent decision." *Id.* at 329–30.

Although we set aside the assault consummated by a battery specification, the appellant remains convicted of aggravated sexual assault. Because the military judge merged these specifications for sentencing purposes and instructed the panel that the two offenses were multiplicious for sentencing, however, we find the approved and adjudged sentence would have been the same even if the assault specification were dismissed at the trial level.[1] *See United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006) (an appellate court can reassess the sentence if it "can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity" as a "sentence of that severity or less will be free of the prejudicial effects of error"); *see also United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013).

*Instruction on Affirmative Defense*

At trial, following a Rule for Courts-Martial 802 session where instructions were discussed, trial defense counsel agreed with the military judge that the evidence had not raised the affirmative defense of consent or mistake of fact as to consent. The appellant now contends the military judge erred by failing to give the instruction, arguing the

---

[1] In 2012, our superior court provided additional clarity on the doctrines of multiplicity and unreasonable multiplication of charges. Multiplicity is a protection against double jeopardy and an offense that is multiplicious for sentencing is *necessarily* multiplicious for findings. *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012). On the other hand, the concept of unreasonable multiplication of charges, which is designed to protect the accused from the potential overreaching of prosecutorial discretion, may apply differently to findings than to sentencing. *Id.* Because we have set aside the Charge under Article 128, UCMJ, 10 U.S.C. § 928, we do not need to conduct further analysis. However, if we did analyze these charges under the relevant tests, we would find that they are not multiplicious because each specification requires proof of an element that the other does not. *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *United States v. Teters*, 37 M.J. 370, 377 (C.M.A. 1993). Applying the *Quiroz* factors, we would find the charges to be an unreasonable multiplication of charges for sentencing because they unduly exaggerate the criminality of the accused. *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001).

victim's interactions with the appellant on the night in question constituted sufficient evidence to require the instruction. We disagree.

Whether a jury was provided proper instructions is a question of law which we review de novo. *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002). A military judge has a sua sponte duty to give a mistake of fact instruction if the issue is reasonably raised by the evidence, unless the accused affirmatively waives the issue. *United States v. Gutierrez*, 64 M.J. 374, 375 (C.A.A.F. 1999). "The defense theory at trial and the nature of the evidence presented by the defense are factors that may be considered in determining whether the accused is entitled to a mistake of fact instruction, but neither factor is dispositive." *United States v. Hibbard*, 58 M.J. 71, 73 (C.A.A.F. 2003).

Here, the appellant did not raise a mistake of fact defense at trial. Instead, the defense argued that the intoxicated victim was mistaken about whether sexual intercourse even occurred. Although some evidence was presented that the victim may have (1) danced suggestively with the appellant at a nightclub, a claim disputed by her husband; (2) rushed into the bathroom as if she had to vomit at some point during the incident in the hotel room, implying she was conscious and therefore not substantially incapacitated; and (3) lightly moaned once during the sexual encounter, this was not elicited or argued as evidence that the victim was or appeared to be consenting to the conduct. More importantly, the exchange between the military judge and trial defense counsel, in the context of the whole record, makes clear that trial defense counsel made a purposeful decision to give up the opportunity to submit any consent defense to the panel. We hold that the defense affirmatively waived the instruction. *See United States v. Smith*, 50 M.J. 451, 456 (C.A.A.F. 1999); *see also United States v. Taylor*, 26 M.J. 127 (C.M.A. 1988) (mistake of fact instruction was not required when the appellant did not rely on mistake of fact as to consent, but rather, on a denial of penetration).

*Assistance of Counsel*

The appellant argues his trial defense counsel were ineffective by failing to (1) conduct DNA testing of items taken from the victim during her sexual assault examination to determine whether the appellant's DNA was present, (2) request an instruction on mistake of fact as to consent, (3) object to portions of trial counsel's closing argument, and (4) move to dismiss one of the sexual assault specifications as multiplicious. He also argues the cumulative effect of these errors warrants the setting aside of his conviction. We disagree.

This court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009). When reviewing such claims, we follow the two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). Our superior court has applied this standard to military courts-martial,

noting that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

The deficiency prong requires the appellant to show his counsel's performance fell below an objective standard of reasonableness, according to the prevailing standards of the profession. *Strickland*, 466 U.S. at 688. The prejudice prong requires the appellant to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In doing so, the appellant "must surmount a very high hurdle." *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997) (citing *Strickland*, 466 U.S. at 689). This is because counsel is presumed competent in the performance of his or her representational duties. *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001). Thus, judicial scrutiny of a defense counsel's performance must be "highly deferential and should not be colored by the distorting effects of hindsight." *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000) (citing *Moulton*, 47 M.J. at 229). The "defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, (1955)). Moreover, "we need not determine whether any of the alleged errors [in counsel's performance] establish[ ] constitutional deficiencies under the first prong of *Strickland* . . . [if] any such errors would not have been prejudicial under the high hurdle established by the second prong of *Strickland*." *United States v. Saintaude*, 61 M.J. 175, 183 (C.A.A.F. 2005).

Responsive declarations provided by trial defense counsel pursuant to an order from this court address each of the alleged deficiencies and shows sound tactical reasons for the decisions now questioned by the appellant. In response to the appellant's claim that DNA testing of the victim's samples should have been conducted, trial defense counsel noted that any effort by the defense to introduce any test results showing the absence of his DNA would have opened the door to the admission of his pretrial statements admitting he engaged in sexual intercourse with the victim. This course of conduct was a sound trial strategy and does not constitute ineffective assistance of counsel.

The appellant also argues his trial defense counsel were ineffective for failing to object when trial counsel referred to a stipulation of expected testimony as a stipulation "of fact" and when he argued a fact not in evidence—that the appellant and victim had not spoken since the hotel room incident. In her affidavit, the trial defense counsel who handled closing argument noted her belief that the relatively minor nature of the objectionable remarks in the context of the entire argument did not warrant interrupting the argument, and we find trial defense counsel made a reasonable tactical decision not to object.

As to the appellant's claim his trial defense counsel were ineffective for failing to move to dismiss the sexual assault allegations as multiplicious or an unreasonable multiplication of charges, trial defense counsel explained the defense's sound tactical decision to allow the panel to expressly consider a lesser offense in findings along with the more serious offense. Furthermore, as noted above, the appellant was not prejudiced in the sentencing phase because the military judge merged the specifications for sentencing and the appellant therefore fails to meet the showing of prejudice required by *Strickland*.

Lastly, we do not find trial defense counsel were ineffective by failing to ask for an instruction on the affirmative defense of mistake of fact. As discussed above, the evidence presented at trial did not reasonably raise that defense. Additionally, trial defense counsel's declarations state their belief this instruction was not consistent with the appellant's pretrial statement and their trial strategy, which was to argue that the intoxicated victim was mistaken about whether sexual intercourse occurred. This strategy was discussed with the appellant in advance of trial. Given this, trial defense counsel were not ineffective for failing to request the instruction.

Therefore, in assessing the appellant's allegation of ineffective assistance of counsel, we find the appellant failed to establish his counsel were deficient such that their performance fell below an objective standard of reasonableness, according to the prevailing standards of the profession. Because we find trial defense counsel were not deficient, we need not address the prejudice prong of *Strickland*. However, even if we had found their performance deficient, we find that the appellant has failed to show that he suffered any prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.

*Legal and Factual Sufficiency*

The appellant argues, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), that the evidence is legally and factually insufficient to support his conviction based on the intoxication levels of the alleged victim and the eyewitness, AB AS, and the lack of physical evidence tying the appellant to any sexual activity.

Under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we review issues of legal and factual sufficiency de novo. *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). The test for factual sufficiency is "whether, after weighing

the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. Applying these standards to the evidence and making allowances for not having observed the witnesses, we find the evidence legally and factually sufficient to prove the appellant's guilt beyond a reasonable doubt to committing an aggravated sexual assault.

*Post-Trial Delay*

In December 2012, the appellant filed a supplemental brief, contending this court should disapprove his bad-conduct discharge because more than 18 months had elapsed since his record was docketed with this court, although he did not allege any specific prejudice from the delay at that time. After we vacated our prior decision, the appellant filed another supplemental brief, again raising the post-trial delay issue.

We review de novo whether an appellant has been denied the due process right to speedy post-trial review and whether any constitutional error is harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of docketing the case before this court. *See Moreno*, 63 M.J. at 142. The *Moreno* standard continues to apply as a case continues through the appellate process. *United States v. Mackie*, 72 M.J. 135 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this court and our superior court is within the 18-month standard. *See Id.* at 136; *see also United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010). However, when a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005). *See also Barker*, 507 U.S. at 530.

The appellant's case was originally docketed with this court on 18 May 2011, and the appellant submitted his initial assignment of errors on 14 February 2012. Following the allegation of ineffective assistance of counsel, the Government sought affidavits from appellant's counsel and submitted them on 20 March 2012. The Government filed its answer on 30 May 2012. This court issued its first decision on 2 May 2013 and its decision upon reconsideration on 16 July 2013. The overall delay of more than 540 days between the time of docketing and the 16 July 2013 decision by this court is facially unreasonable. *See Moreno*, 63 M.J. at 142.

We have therefore examined the factors identified in *Barker* to determine whether the appellant suffered from a due process violation as a result of the delay. Having conducted that analysis, we find no such due process violation occurred in the delay leading up to this court's 16 July 2013 decision.

The first, second, and third factors weigh in favor of the appellant. First, the length of the delay between docketing and our July 2013 decision is presumptively unreasonable. *See Moreno*, 63 M.J. at 142. The second factor, reasons for the delay, also weighs in favor of the appellant. The appellant filed three enlargements before filing his assignment of errors on 14 February 2012, 272 days after docketing, and the case was joined in late May 2012, after the Government received several extensions of time to file its answer, without objection from the appellant. Our initial opinion was not issued until a year later. While the delay may have been related to the number of personnel assigned to the court and other related administrative issues, we are mindful of our superior court's emphasis that the established benchmarks do not create a *free* period, and "personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay." *United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011). Relative to the third factor, in December 2012, the appellant asserted his right to timely appeal, via a supplemental assignment of error.

However, we conclude that the fourth factor, prejudice, does not weigh in favor of the appellant:

> "In the case of appellate delay, prejudice should be assessed in light of the interests of those convicted of crimes to an appeal of their convictions unencumbered by excessive delay. . . . [Those interests are]: (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired."

*Moreno*, 63 M.J. at 138–39 (quoting *Rheuark v. Shaw*, 628 F.2d 297, 303 n.8 (5th Cir. 1980)).

The appellant does not contend that the first or third interest has been impacted by post-trial delay. Instead, the appellant—now out of confinement on mandatory supervised release—submitted an affidavit recently to this court, contending his double conviction for the same incident "makes it look like [he is] a repeat offender." His affidavit describes difficulty in seeking employment, stating: "[A]s soon as I bring up the charges, I don't hear back from that employer." He also contends that he and his family have been enduring stress as they await the final decision from this court.

We find these claims insufficient to establish prejudice for a due process violation. Regarding the employment situation, we note the appellant has offered no independent evidence to support his claim that his ability to secure employment was impaired by post-trial delay or his dual convictions, nor has he stated that an employer would have hired him if he was only convicted of one sexual assault offense. *See United States v. Bush*, 68 M.J. 96, 101 (C.A.A.F. 2009) ("In most cases, the appropriate source of information pertaining to the hiring decisions of a potential employer will be a representative of the potential employer itself."). We therefore conclude the record does not demonstrate that it was the appellant's dual conviction that kept him from gaining employment and that he would not have been denied employment on some other grounds. Also, he has not shown "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by [those] awaiting an appellate decision." *Moreno*, 60 M.J. at 140.

Even in the absence of specific prejudice, however, a constitutional due process violation still occurs if, "in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Relief in such cases is provided unless the Government meets its burden of showing that the constitutional error is harmless beyond a reasonable doubt. *Allison*, 63 M.J. at 370. Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case prior to the issuance of our 16 July 2013 opinion to not be so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

As for the time that has elapsed since this court's 16 July 2013 decision, we also find no due process violation. The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this court and our superior court is within the 18-month standard. *Id. at 136*; *see also United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010). The time between our superior court's action to return the record of trial to our court for our action and this decision has not exceeded 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered. *See Id.* Furthermore, the reason for the delay between 16 July 2013 and our opinion today was to allow this court and our superior court to fully consider a constitutional issue of first impression: whether the Secretary of Defense has the authority under the Appointments Clause[2] to appoint civilian employees to the service courts of criminal appeals.

---

[2] U.S. CONST. art II § 2, cl 2.

Lastly, even assuming the total appellate processing of this case raises a presumption of unreasonable delay, we again conclude the delay was harmless under the *Barker* and *Toohey* analyses.

While we find the post-trial delay was harmless, that does not end our analysis. Article 66(c), UCMJ, empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *See Tardif*, 57 M.J. at 224; *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the factors are the length and reasons for the delay, the length and complexity of the record, the offenses involved, and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. When considering these factors, including our finding there was no bad faith or gross negligence in the post-trial processing in any stage of the appellate review of this matter, we conclude that sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The findings of guilty as to Charge II and its Specification are set aside, and that Charge and its Specification are dismissed. Accordingly, the remaining findings and the sentence, as approved, are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant remains. Articles 59(a) and 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). Accordingly, the modified findings and reassessed sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court