**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman AUSTIN R. SWANSON**
**United States Air Force**

**ACM 38827**

**27 October 2016**

Sentence adjudged 13 April 2015 by GCM convened at Buckley Air Force Base, Colorado. Military Judge: Marvin W. Tubbs (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for Appellant: Major Lauren A. Shure.

Appellate Counsel for the United States: Captain Tyler B. Musselman and Gerald R. Bruce, Esquire.

Before

MAYBERRY, SPERANZA, and JOHNSON
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

JOHNSON, Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty in accordance with his pleas of one specification of failure to obey a lawful order, one specification of committing a sexual act upon a child who has attained the age of 12 years, one specification of adultery prejudicial to good order and discipline and of a nature to bring discredit upon the armed forces, one specification of producing child pornography, and one specification of possessing child pornography, in violation of Articles 92, 120b,

and 134, UCMJ, 10 U.S.C. §§ 892, 920b, 934.[1]  The court-martial sentenced Appellant to a dishonorable discharge, confinement for 28 months, forfeiture of all pay and allowances, and reduction to E-1.  In accordance with a pretrial agreement, the convening authority approved a bad-conduct discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction to E-1.

Before us, Appellant seeks relief on two grounds:  first, due to the conditions of his post-trial confinement; and second, because he asserts the Government has attempted to impede his due process right to speedy post-trial review.  Finding no relief is warranted on either issue, we affirm the findings and sentence.

*Background*

Appellant engaged in a sexual relationship with a 15-year-old child, MLO, over a period of several months.  When the relationship began, Appellant was married but estranged from his wife.  Appellant and MLO held themselves out as boyfriend and girlfriend, and their relationship was known to both Appellant's family and MLO's family.[2]  During the relationship, Appellant and MLO created three videos and three images on Appellant's cell phone depicting MLO engaging in sexually explicit conduct with Appellant.  The relationship was tumultuous and resulted in several visits by civilian police to Appellant's off-base residences and, eventually, Appellant's eviction from multiple apartments.  Eventually, Appellant's commander directed him to move into quarters on base and issued Appellant an order not to have contact with MLO.  Appellant violated this order repeatedly and in multiple ways.  As a result, Appellant was placed in pretrial confinement in a local civilian facility operated by the Douglas County (Colorado) Sheriff's Office (DCSO) on 25 November 2014.  Appellant remained a pretrial confinee through the conclusion of his court-martial on 13 April 2015.[3]  Appellant remained in post-trial confinement at the same DCSO facility until his transfer on 29 April 2015.

---

[1] Pursuant to Appellant's pretrial agreement with the convening authority, one specification of larceny of military property and one specification of obstruction of justice in violation of Articles 121 and 134, UCMJ, 10 U.S.C. §§ 921, 934, were withdrawn and dismissed at trial.

[2] Appellant was 22 and 23 years old at the time.  Appellant and MLO believed that Colorado law did not forbid their sexual relationship because she was 15 years old and he was less than 10 years older than she.  *See* COLO. REV. STAT. § 18-3-402(1)(e).

[3] Appellant's court-martial took place on two dates:  4 March 2015 and 13 April 2015.  The 4 March 2015 session consisted of a brief Article 39(a) hearing for the purpose of arraigning Appellant.  However, after Appellant waived the reading of the charges and trial counsel described the preferral and referral, the military judge failed to ask Appellant how he pleaded, resulting in a defective arraignment.  *See* Rule for Courts-Martial (R.C.M.) 904, Discussion ("Arraignment is complete when the accused is called upon to plead . . . ").  Appellant was not fully arraigned until the final trial date, 13 April 2016, at which point more than 120 days had elapsed since Appellant entered pretrial confinement.  *See* R.C.M. 707(a) ("The accused shall be brought to trial within 120 days after the earlier of . . . [t]he imposition of restraint under R.C.M. 304(a)(2)–(4) . . . ").  However, Appellant's subsequent guilty plea waived any relief he may have sought for a violation of R.C.M. 707(a).  R.C.M. 707(e).

Appellant entered into a pretrial agreement with the convening authority whereby Appellant, *inter alia*, agreed to waive all waivable motions. In the course of the military judge's providency inquiry with Appellant, trial defense counsel indicated the defense had identified a potential motion for sentencing credit for illegal pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813, based on the conditions of Appellant's confinement at the DCSO facility. Trial defense counsel described the following as factual bases for the potential motion: Appellant being confined to his cell for 23 hours a day, being transported to the base for appointments and hearings in shackles and a prison jumpsuit, having poor access to mental health counseling and religious services, and being mistakenly told he would be released from confinement. Based on these circumstances, trial defense counsel indicated the defense would have sought three-for-one credit against any sentence to confinement. Appellant confirmed he was giving up the right to litigate any issue of illegal pretrial punishment in order to obtain the benefit of the pretrial agreement.

During sentencing proceedings, Appellant further described the conditions of his pretrial confinement at the DCSO facility. Appellant related that he was on "23-hour lockdown" and only had one hour a day to make phone calls, shower, watch television, and use the recreation yard. He was generally kept segregated from other confinees. He complained that the process for obtaining appointments with the chaplain and mental health counselors was slow. In addition, Appellant stated that the food portions provided at the facility were very small and he had lost almost 20 pounds during his confinement.

On appeal, Appellant submitted a declaration stating the conditions of his post-trial confinement at the DCSO facility were identical to those of his pretrial confinement. He reiterated that he was not allowed out of his individual cell unless no other inmates were present. On some days he was permitted only one hour outside his cell, on other days more time, but in any event less than he would have received as a general population inmate. Appellant asserts he believes the DCSO segregated him this way solely to avoid housing him with a foreign national inmate.

In response, the Government submitted a sworn statement from Lieutenant BM of the DCSO Detentions Division. Lieutenant BM confirmed several aspects of the conditions described by Appellant. He indicated Appellant had been housed in the DCSO facility in single-person cells from 25 November 2014 until 29 April 2015. By agreement with the Air Force, Appellant was kept away from the general population of inmates because he was a military member. Lieutenant BM described Appellant's cells as five feet by ten feet or slightly larger, furnished with a bed, desk, chair or stool, toilet, and sink, and with a window that admits daylight. The single-person cells in the facility are arranged in pods that share a common day room. The pods Appellant was housed in were used to house inmates who were deemed to require separation from the general population, including not only military personnel but also high-profile inmates, inmates in protective custody, inmates in administrative segregation, and inmates with certain medical

conditions. According to Lieutenant BM, inmates kept in solitary confinement for disciplinary reasons were housed in a different pod dedicated for that purpose. During part of his post-trial confinement, Appellant was confined to his cell for 23 hours per day and allowed in the day room for one hour; at other times, he was allowed day room access for half the day. In the day room, Appellant had access to a shower, television, telephone, visitation, and the recreation yard. Appellant was provided the same food as other inmates, and he could purchase other food items through a commissary. The DCSO facility had a process for inmates to request mental health counseling and religious services, and it also had a process for inmates to file grievances regarding the conditions of their confinement. According to Lieutenant BM, there is no record that Appellant filed such a grievance.

In addition, the Government submitted a sworn statement from Technical Sergeant (TSgt) TM, the noncommissioned officer in charge of military justice for the 460th Space Wing at Buckley Air Force Base, Colorado. TSgt TM related she could find no evidence Appellant submitted a complaint pursuant to Article 138, UCMJ, 10 U.S.C. § 938, while confined at the DCSO facility.

Additional facts are included as necessary in the discussion below.

*Conditions of Post-Trial Confinement*

Appellant does not contend that the conditions of his post-trial confinement amounted to cruel or unusual punishment in violation of the Eighth Amendment[4] or Article 55, UCMJ, 10 U.S.C. § 855, and we find no such violation.[5] However, citing this court's opinion in *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), Appellant calls upon us to exercise our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to disapprove his bad-conduct discharge or provide some other form of sentence relief due to the conditions of his post-trial confinement, or to direct a post-trial fact-finding hearing if this court requires additional information to make a determination.

---

[4] U.S. CONST. amend. VIII.

[5] Both the Eighth Amendment and Article 55, UCMJ, 10 U.S.C. § 855, prohibit cruel and unusual punishment. In general, we apply "the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, [UCMJ,] except in circumstances where . . . legislative intent to provide greater protections under [Article 55, UCMJ,]" is apparent. *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citing *United States v. Wappler*, 9 C.M.R. 23, 26 (C.M.A. 1953)). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). A violation of the Eighth Amendment is shown by demonstrating: "(1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [the appellant's] health and safety; and (3) 'that [the appellant] has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938.'" *Id.* (footnotes omitted). Applying these standards de novo, *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001), we find no Eighth Amendment or Article 55 violation.

This court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ. Before making this determination, we first assess whether we should remand this case for a post-trial fact-finding hearing. In *United States v. Fagan*, 59 M.J. 238, 241–42 (C.A.A.F. 2004), our superior court determined that the framework of *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), guides our determination of whether a post-trial fact-finding hearing is necessary to resolve a claim based on the conditions of post-trial punishment. Therefore, we apply the following principles—originally set forth to deal with post-trial claims of ineffective assistance of counsel—to determine whether post-trial declarations submitted by the parties enable us to resolve the issue, or whether a post-trial fact-finding hearing is required:

> First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.
>
> Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.
>
> Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.
>
> Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.
>
> Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

ACM 38827

Sixth, the Court of Criminal Appeals is required to order a fact[-]finding hearing only when the above-stated circumstances are not met. In such circumstances the court must remand the case to the trial level for a *DuBay* proceeding. During appellate review of the *DuBay* proceeding, the court may exercise its Article 66 fact[-]finding power and decide the legal issue.

*Ginn*, 47 M.J. at 248; *see also United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967).

Applying this analysis, we find it unnecessary to remand this case for additional fact-finding. As explained above, Appellant's account of the conditions of his confinement, as described at trial and in his post-trial declaration, are essentially consistent with Lieutenant BM's declaration. To the extent there are differences between Appellant's account and the Government's evidence, our resolution of those discrepancies in Appellant's favor would not result in granting Appellant relief.

Next, we turn to the application of Article 66(c), UCMJ. In *Gay*, this court employed its Article 66(c) authority to grant the appellant sentencing relief even in the absence of cruel or unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ. 74 M.J. at 742. In reviewing that decision, our superior court held that this court did not abuse its discretion in doing so, based on the facts of that case. *United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016). However, our superior court noted that *Gay* involved unique facts driven by legal errors in the post-trial process that included both a violation of the appellant's rights under Article 12, UCMJ, 10 U.S.C. § 812, and the ordering of solitary confinement by an Air Force official where an alternative solution was available. *Id.* Significantly, our superior court emphasized, "In reaching this conclusion, we do not recognize unlimited authority of the Courts of Criminal Appeals to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove." *Id.*

Appellant relies on one particular similarity between the conditions of his confinement and those described in *Gay*: in both cases a military prisoner held in a civilian confinement facility was kept in isolation in order to avoid being housed with foreign nationals in violation of Article 12, UCMJ. *See Gay*, 74 M.J. at 739. However, the propriety of Article 66(c) sentence relief for a particular appellant is a fact-specific determination, and there are important differences between Gay's case and Appellant's. In *Gay*, the civilian confinement facility had an existing process to avoid housing military confinees with foreign nationals that did not require solitary confinement, but for reasons that are unclear, an Air Force official specifically requested that Gay be placed in solitary confinement. *Id.* at 739, 743. When representatives from Gay's squadron, alarmed at his conditions, requested that Gay be removed from solitary confinement, the civilian facility readily acceded to that request. *Id.* There is no comparable evidence in the present case;

rather, Lieutenant BM's declaration indicates Appellant was housed according to the usual procedures applied to other military prisoners, as well as other inmates requiring separation from the general population.

In addition, unlike Gay, Appellant made no complaint regarding the conditions of his confinement through the Article 138, UCMJ, and facility grievance procedures available to him. *See id.* at 738-42. Appellant does not assert, and there is no other evidence, that he made such a complaint. Our superior court has emphasized, "A prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007). This requirement "promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review]." *Id.* at 471 (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). An appellant must show that "absent some unusual or egregious circumstance . . . he has exhausted the prisoner-grievance system [in his detention facility] and that he has petitioned for relief under Article 138." *Id.* (quoting *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)).

Finally, the particular conditions of Appellant's post-trial confinement do not rise to the level of being so oppressive or disgraceful as to warrant sentence relief. Appellant was subjected to the same treatment and conditions applied to other inmates requiring segregation from the general population of the facility for non-disciplinary purposes. There is no evidence he was subjected to physical or mental abuse, singled out for unusual treatment, denied necessary medical attention, or refused any other necessity. Nor is there evidence the conditions of his confinement impacted his access to counsel or any other post-trial due process right. Therefore, we find the extraordinary use of our Article 66(c) power to grant sentence relief is not warranted in this case.

*Post-Trial Delay*

Appellant next contends that the Government repeatedly attempted to delay the appellate review of his case in violation of his due process right to speedy post-trial review. *See United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). As a result, Appellant asserts, this court should set aside his punitive discharge or grant other sentence relief. In order to examine and resolve Appellant's contention, it is necessary to recount the post-trial progress of this case.

Appellant's court-martial concluded on 13 April 2015. On 6 June 2015, 54 days later, the convening authority took action on the findings and sentence, reducing Appellant's punishment in accordance with the pretrial agreement as described above. Ten days later, on 16 June 2015, Appellant's case was docketed with this court.

Between 7 December 2015 and 4 May 2016, Appellant requested and was granted by this court six enlargements of time in which to file his assignments of error. On 9 June

2016, Appellant filed an assignment of error, seeking relief due to the conditions of his post-trial confinement as described above. However, Appellant did not move to attach a declaration or other evidence regarding the conditions of his post-trial confinement. Instead, his assignment of error asserted that the conditions of his post-trial confinement were identical to the conditions of his pre-trial confinement; he was obtaining records from the confinement facility; and he would move to attach these records in the future because he did not want to further delay the filing of his assignment of error.

On 15 June 2016, the Government submitted a motion requesting this court strike Appellant's assignment of error without prejudice because Appellant's filing was premature and incomplete. The Government asserted Appellant had offered no evidence regarding the conditions of his post-trial confinement and, therefore, the Government could not respond to the assignment of error. On 23 June 2016, this court granted the Government's motion to strike the 9 June 2016 assignment of error and required Appellant to submit an assignment of error or obtain an enlargement of time before 8 July 2016.

On 7 July 2016, Appellant resubmitted his assignment of error raising the same issue as before, but this time it was accompanied by a motion to attach a declaration from Appellant dated 7 July 2016. On 14 July 2016, the Government opposed Appellant's motion to attach the declaration. Citing our superior court's decisions in *United States v. Boone*, 49 M.J. 187, 191–93 (C.A.A.F. 1998) and *United States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988), the Government asserted this court was under no duty to receive supplementary materials related to sentence appropriateness. According to the Government, because the post-trial confinement conditions Appellant complained of ended on 29 April 2015—when Appellant was transferred from the DCSO facility—and this occurred prior to Appellant's submission of matters to the convening authority pursuant to Rule for Courts-Martial 1105, Appellant should have included evidence of those conditions in that submission if he wanted them included in the record and considered.

On 15 July 2016, Appellant submitted a response to the Government's opposition to his motion to attach, and he moved this court to submit a supplemental assignment of error raising his claim that the Government was attempting to delay the speedy post-trial processing of his case in violation of his right to due process. On 28 July 2016, this court granted Appellant's 7 July 2016 motion to attach and his 15 July 2016 motion to file his supplemental assignment of error. The Government filed its answer to the supplemental assignment of error on 8 August 2016, accompanied by a motion to attach the declarations of Lieutenant BM and Technical Sergeant TM, dated 2 August 2016 and 3 August 2016, respectively, described above.[6]

---

[6] Additional motions and oppositions followed, but it is not necessary to recount them all for purposes of our analysis of Appellant's due process claim.

Against this background, Appellant complains the Government is "taking active steps to prevent the resolution of this case," entitling him to relief for violation of his due process right to speedy post-trial review. *See Moreno*, 63 M.J. at 135. Alternatively, Appellant seeks sentence appropriateness relief from this court under Article 66(c), UCMJ, citing *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002) and *Gay*, 74 M.J. at 742.

In *Moreno*, our superior court confirmed that "convicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." 63 M.J. at 135 (citing *United States v. Toohey*, 60 M.J. 100, 101 (C.A.A.F. 2004); *United States v. Diaz* 59 M.J. 34, 37–38 (C.A.A.F. 2003)). We review de novo claims that an appellant has been denied that right. *Moreno*, 63 M.J. at 135. For purposes of our analysis, the threshold question is whether there has been a "facially unreasonable delay." *Id.* at 136 (citation omitted). The *Moreno* decision established a presumption of unreasonable post-trial delay when the convening authority does not take action on the findings and sentence within 120 days of trial, when a record of trial is not docketed with the service court within 30 days of the convening authority's action, and when appellate review is not completed and a decision rendered by a service court of criminal appeals within 18 months of the case being docketed with that court. *Id.* at 142. A facially unreasonable post-trial delay triggers an analysis of the familiar four-factor balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), involving: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to timely review and appeal; and (4) the prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey*, 60 M.J. at 102)).

In this case, the parties recognize that none of the *Moreno* presumptions of unreasonable delay have been triggered. Appellant's position appears to be that the Government's allegedly egregious conduct has nevertheless resulted in unreasonable post-trial delay in violation of his due process rights. The Government, in contrast, citing our superior court's decision in *United States v. Roach*, 69 M.J. 17 (C.A.A.F. 2010), contends that unless the *Moreno* timelines are exceeded there cannot be an unreasonable delay, and our due process analysis ends at that point without reaching the *Barker* balancing test. The Government misconstrues the significance of *Roach* and the role of the *Moreno* standards in protecting an appellant's right to speedy post-trial and appellate review.

In *Roach*, our superior court considered, *inter alia*, the appellant's assertion that although this court's initial appellate decision was issued only 13 months after his case was docketed, this court's alleged purposeful disregard of binding case law and "attempt to manipulate the law to reach a desired result" caused 19 months of further post-trial delay. *Roach*, 69 M.J. at 22. Contrary to the Government's assertion, our superior court did not hold that a due process violation cannot occur so long as a service court issues its initial opinion within 18 months of the case being docketed. *Id.* Rather, it held that the facts in *Roach* did not support the appellant's claim that his case had been maliciously delayed by

this court or its judges. *Id.* ("Whether, and how, a showing of 'malicious delay' on the part of an appellate judge might inform the *Barker* factors is a question for another day.")

Similarly, *Moreno* itself does not foreclose consideration of an appellant's complaint of post-trial delay simply because the time standards establishing a presumptively unreasonable delay have not been exceeded. *See* 63 M.J. at 142. *Moreno* added to the protection of an appellant's right to speedy post-trial and appellate review by creating a presumption of unreasonable delay where a service court does not issue an opinion within 18 months of docketing. *Id.* However, our superior court did not purport to set forth the *exclusive* criteria for facially unreasonable delay; it did not strip an appellant of the opportunity to assert that an unreasonable delay could occur before the 18-month point. In other words, it is possible for a facially unreasonable delay triggering the four-factor *Barker* analysis—whether due to malice, neglect, or some other circumstance—to occur before 18 months has elapsed.

However, such is not the case here. Appellant contends the Government is "taking active steps to prevent the resolution of this case." He points to the Government's 15 June motion to strike his original 9 June assignment of error, and this court's grant of the Government's motion on 23 June, to which he attributes a 29-day delay between his original filing and renewed filing of the assignment of error on 7 July. We find his contention unpersuasive. As evidenced by this court's ruling, the Government motion to strike was well-founded. Appellant at that point had not provided a factual basis for his claim that the conditions of his post-trial confinement warranted relief, and it was not unreasonable for the Government to object that it therefore could not respond to Appellant's assertion. Simply stating in the assignment of error that the post-trial conditions at the DCSO facility were the same as the pre-trial conditions was not sufficient.[7]

Appellant also complains of the Government's 14 July opposition to his 7 July motion to attach his declaration regarding post-trial confinement. Again, we are unmoved. Although this court implicitly disagreed with the Government's position by granting Appellant's motion to attach, we note the Government was perfectly within its rights to oppose the motion and we discern no improper motive or prejudice to Appellant. We note the Government filed its answer to Appellant's assignments of error just 24 days after Appellant submitted his supplemental assignment of error, and it has not at any point requested an enlargement of time to respond.

Accordingly, we do not find any facially unreasonable delay offensive to Appellant's right to speedy post-trial and appellate review that would trigger an analysis of the *Barker* factors. *See Moreno*, 63 M.J. at 135.

---

[7] In Appellant's submission of matters to the convening authority, trial defense counsel briefly touched on the conditions of Appellant's confinement, but he referred to and attached Appellant's unsworn statement at trial and a pretrial motion for appropriate relief, both of which described pretrial conditions.

Finally, we consider Appellant's call for this court to employ our Article 66(c), UCMJ, authority to grant him relief due to post-trial delay in this case. *See Tardif*, 57 M.J. at 224; *Gay*, 74 M.J. at 742. We decline to do so. As described above, we have not found Appellant was subjected to any unreasonable delays in the post-trial processing of his case. Indeed, the sentencing-to-action and action-to-docketing phases were accomplished far in advance of the *Moreno* time standards, and this court's opinion will be issued well within 18 months of docketing. In addition, we can discern no particular prejudice to Appellant other than that experienced by any other appellant who consults with counsel, participates in the appellate process, and awaits the timely resolution of his appeal.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of Court